UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL V. SEDLAK, | ) | Case No.: 5:10 CV 00500 |
| Plaintiff | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| SYLVIA SEDLAK, *et al.*, | ) | |
| Defendants | ) | <u>ORDER</u> |

Currently pending in the above-captioned case are Defendant City of Stow's ("Defendant" or "City of Stow") Motion to Dismiss (ECF No. 3) and Motion for Ruling on Pending Motion to Dismiss (ECF No. 30). For the reasons that follow, the City of Stow's Motion to Dismiss and Motion for Ruling are granted.

### I. FACTS AND PROCEDURAL HISTORY

Plaintiff Daniel Sedlak ("Plaintiff" or "Mr. Sedlak") brought this action against Sylvia Sedlak ("Ms. Sedlak"), Wes Dobbins ("Dobbins"), individually and in his official capacity as a Deputy of the Summit County Sheriff's Department, Drew Alexander ("Alexander"), Sheriff of Summit County, Summit County ("Summit County"), the City of Stow, and John/Jane Doe 1-5, as employees of the City of Stow, seeking compensatory and punitive damages, costs and attorney's fees. (Am. Compl., ECF. No. 1-4, at 2, 14.) Plaintiff has alleged five causes of action against the City of Stow:

(1) liability under 42 U.S.C. § 1983; (2) malicious prosecution; (3) false arrest; (4) false imprisonment and (5) respondeat superior. (*Id.* at 8-14.)

On February 20, 2009, Ms. Sedlak made a written witness complaint to Dobbins, a deputy of the Summit County Sheriff's Department, wherein she stated her belief that Plaintiff violated a protective order, had been acting erratically, and caused her to fear that he would harm her or those close to her. (*Id.* at ¶ 4.) At the time, Plaintiff and Ms. Sedlak were married, but engaged in divorce proceedings. (*Id.* at ¶¶ 1-2.) Plaintiff alleges that Dobbins did not read the statement or take any steps to verify the truth of Ms. Sedlak's allegations. (*Id.* at ¶¶ 8-15, 17.)

Dobbins subsequently filed a criminal complaint against Plaintiff in Stow Municipal Court, alleging that Plaintiff had violated Ohio Revised Code § 2919.27. (*Id.* at ¶ 16.) A Stow Municipal Court Deputy Clerk signed a warrant on the complaint stating that Plaintiff "did by engaging in a pattern of conduct, knowingly, cause Sylvia Sedlak (his wife) to believe that he would cause physical harm to her or cause mental distress to her; in violation of 2903.211 of the Revised Code." (*Id.* at ¶ 24.) Plaintiff alleges that the Deputy Clerk did not engage in a meaningful independent inquiry or a probable cause determination prior to signing the warrant. (*Id.* at ¶¶ 25-26.) After receipt of the warrant, Dobbins arrested Plaintiff, handcuffed him and placed him in jail. (Id. at ¶¶ 29-30.)

Plaintiff was arraigned in Stow Municipal Court on one count of violating a protection order in violation of Ohio Revised Code § 2919.27, and one count of menacing by stalking in violation of Ohio Revised Code § 2903.211. (*Id.* at ¶ 36.) On or about April 27, 2009, all charges pending against Plaintiff were dismissed without prejudice at the State's cost. (*Id.* at ¶ 38.) Plaintiff alleges that he did not commit any offense and was innocent at the time of his arrest. (*Id.* at ¶¶ 39-40.)

On March 12, 2010 the City of Stow filed a Motion to Dismiss. (ECF No. 3.) On November 24, 2010 the case was perpetually stayed due to Plaintiff's pending bankruptcy (J. Entry Staying Proceedings, ECF No. 25), and on March 11, 2011, the stay was lifted by court order. A status conference was held on April 5, 2010, and Plaintiff's counsel indicated that Plaintiff needed to take the deposition of a Stow deputy clerk to determine if he would continue to oppose Stow's Motion to Dismiss. (City of Stow's Mot. for Ruling, ECF No. 30, at 1.) The court issued an Order following the status conference, stating that "Plaintiff's counsel may take one additional deposition relative to the pending Motion to Dismiss by Defendant City of Stow, but will, in any event, let the court know by May 15, 2011 whether it will continue to oppose that Motion or will voluntarily dismiss the City of Stow as a Defendant." (Status Conference Order, ECF No. 28.)

## II. MOTION TO DISMISS STANDARD

The court examines the legal sufficiency of the plaintiff's claim under Federal Rule of Civil Procedure 12(b)(6). *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993). The Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and recently in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009) clarified the law regarding what the plaintiff must plead in order to survive a Rule 12(b)(6) motion.

When determining whether the plaintiff has stated a claim upon which relief can be granted, the court must construe the Complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Even though a Complaint need not contain

"detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.* A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court in *Iqbal*, 129 S.Ct. at 1949, further explains the "plausibility" requirement, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Furthermore, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

The Sixth Circuit has held that a court may consider allegations contained in the Complaint, as well as exhibits attached to or otherwise incorporated in the Complaint, all without converting a Motion to Dismiss to a Motion for Summary Judgment. Fed. R. Civ. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

### III. LAW AND ANALYSIS

#### A. City of Stow's Motion to Dismiss

1. 42 U.S.C. § 1983

a. Standard

Pursuant to 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected any . . . other person . . . to the deprivation of any rights . . . secured by the

-4-

> Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Generally, to prevail on a § 1983 claim, the plaintiff must show "'that (1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right.'" *Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483, 490 (6th Cir. 2002) (citing *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001)).

Municipalities are considered "persons" for purposes of § 1983 liability. *L.A. Cnty. v. Humphries*, 131 S. Ct. 447, 451-52 (2010). A municipality may only be held liable under § 1983 for its own violations of federal law and will not be liable merely on the theory of respondeat superior. *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). According to the Supreme Court, "'a municipality cannot be held liable' solely for the acts of others, *e.g.*, 'solely because it employs a tortfeasor.'" *Humphries*, 131 S. Ct. at 452 (citing *Monell*, 436 U.S. at 691). However, a municipality may be held liable "when execution of a [local] government's policy or custom . . . inflicts the injury." *Monell*, 436 U.S. at 694. In other words, when civil rights plaintiffs bring § 1983 actions against municipalities, the plaintiff "must show that their injury was caused by a municipal policy or custom." *Humphries*, 131 S. Ct. at 449 (citing *Monell*, 436 U.S. 658). The plaintiff has the burden to prove "the existence of an unconstitutional policy" and must demonstrate "the link between the policy and the alleged injuries at issue." *Bennett v. City of Eastpointe*, 410 F.3d 810, 819 (6th Cir. 2005) (citing *King v. City of Eastpointe*, 86 F. App'x 790, 801 (6th Cir. 2003)).

b. § 1983 Analysis

Plaintiff alleges that "[the City of Stow] had a policy and/or custom which operated to deprive Plaintiff of his constitutional rights," and that "[a]n established practice, policy and/or custom by [the City of Stow] deprived Plaintiff of his constitutional rights." (Am. Compl., at ¶ 94-95.)  Plaintiff fails to point to any specific City of Stow policy or custom, or show a causal link between the alleged unconstitutional policy and the Plaintiff's alleged injury.  He merely states that "Defendants had a policy and/or custom which operated to deprive Plaintiff of his constitutional rights." (*Id*. at ¶ 94.)  The Supreme Court has held that "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 129 S.Ct. at 1949.  Therefore, Plaintiff's allegations do not state a plausible claim for relief, and thus, are insufficient to survive a motion to dismiss.  *Id.*

2. State Immunity

a. Standard

According to the Sixth Circuit, the Political Subdivision Tort Liability Act, Ohio Revised Code Chapter 2744, *et seq.*, generally grants "sovereign immunity to political subdivisions." *Theobald v. Bd. of Cnty. Comm'rs*, 332 F.3d 414, 416 (6th Cir. 2003).  Pursuant to Ohio Revised Code § 2744.02, "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

The Ohio Supreme Court has interpreted § 2744.02 as setting forth a three-tiered analysis for determining whether a political subdivision is immune from liability.  *Cater v. City of Cleveland*, 697 N.E.2d 610, 614 (1998).  First, the court considers whether a political subdivision has caused

the alleged injury in connection with a governmental or proprietary function. *Howard v. Miami Twp. Fire Div.*, 891 N.E.2d 311, 314 (2008); *See also* OHIO REV. CODE § 2744.02. A political subdivision is a "municipal corporation, township, county . . . or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state." OHIO REV. CODE § 2744.01(F). A "governmental function" includes "[j]udicial, quasi-judicial, prosecutorial, legislative, and quasi-legislative functions." OHIO REV. CODE § 2744.01(C)(2)(f). "Proprietary functions" are defined as those that "promote or preserve the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons, and not the activities described in Ohio Revised Code § 2744.01(C)(1)(a) or (b) or § 2744.01(C)(2). OHIO REV. CODE § 2744.01(G)(1). Second, the court considers whether an exception to the general rule of immunity is applicable. *Howard*, 891 N.E.2d at 314. The exceptions under the Political Subdivision Tort Liability Act are, in brief: (1) negligent operation of a motor vehicle; (2) negligent performance of a proprietary function; (3) negligent failure to keep public roads in repair and remove obstructions from public roads; (4) physical defects within or on the grounds of public buildings; and (5) express impositions of civil liability under the Ohio Revised Code. OHIO REV. CODE § 2744.02(B)(1)-(5). Third, if the court finds an applicable exception, then the court must consider whether the political subdivision can still establish immunity by demonstrating another statutory defense. *Howard*, 891 N.E.2d at 314; *see also* OHIO REV. CODE § 2744.03.

### b. Immunity Analysis

Plaintiff has alleged several tort claims, including false arrest, false imprisonment and malicious prosecution, against the City of Stow. Because government entities, such as the City of

Stow, are generally immune from tort liability for their own actions and those of their employees under § 2744, the court must consider whether Plaintiff's claims satisfy any of the exceptions.

The City of Stow satisfies the first tier of the *Cater* analysis. Because the City of Stow is a municipal corporation that is responsible for governmental activities in an area smaller than the State of Ohio, it is indisputably a political subdivision. OHIO REV. CODE § 2744.01(F). Plaintiff's alleged injury also is derived from the City of Stow's governmental activities because the City of Stow's challenged conduct was "[j]udicial, quasi-judicial, or prosecutorial." OHIO REV. CODE § 2744.01(C)(2)(f); *see also Kinstle v. Jennison*, 901 N.E.2d 830 (Ohio App. 2008) (holding Clerk of Court was entitled to immunity for her actions in her capacity as Clerk of Courts because the Clerk's work qualified as a governmental function under Ohio Revised Code § 2744.01(C)(2)). Therefore, the instant case turns on the second tier of the § 2744.02 analysis, whether an exception to the default rule of sovereign immunity applies.

Plaintiff challenges City of Stow's conduct in his arrest, imprisonment, and prosecution. (Am. Compl., at 8-11.) The recognized exceptions to the Political Subdivision Tort Liability Act only include those enumerated above, and do not allow plaintiffs to bring causes of actions against political subdivisions for false arrest, false imprisonment and/or malicious prosecution. Furthermore, Ohio courts have held that political subdivisions are immune from liability for intentional torts, including: false arrest, false imprisonment, and malicious prosecution. *See Price v. Austintown Local Sch. Dist. Bd. of Educ.*, 897 N.E.2d 700 (Ohio App. 2008) (holding a school board immune from a malicious prosecution claim); *Griffits v. Newburgh Heights*, No. 91428, 2009 WL 280376 (Ohio App. Feb. 5, 2009) (holding a village immune from various torts including false arrest and malicious prosecution); *Harris v. Sutton*, 918 N.E.2d 181 (Ohio App. 2009) (holding a

-8-

city immune from malicious prosecution claim); *Frazier v. Clinton Cnty. Sheriff's Office*, No. CA 2008-04-015, 2008 WL 4964322 (Ohio App. Nov. 24, 2008) (holding sheriff's office immune from malicious prosecution, false arrest and false imprisonment claims); *Barstow v. Waller*, No. 04CA5, 2004 WL 2427396 (Ohio App. Oct. 26, 2004) (holding city immune from false arrest and malicious prosecution). Accordingly, because of the lack of an exception to immunity and in light of well-established Ohio precedent, the court need not consider the third tier of the § 2744.02 analysis. As Defendant City of Stow is immune, the court need not give consideration to the merits of Plaintiff's tort claims.

Because Ohio political subdivision tort liability under respondeat superior only arises when an exception to the general rule of immunity applies and none of the exceptions apply to the instant case, the City of Stow may not be held liable for the allegedly tortious acts committed by its employees.

### B. City of Stow's Motion for Ruling

Plaintiff has not notified this Court as to its intentions to continue to oppose City of Stow's Motion to Dismiss or voluntarily dismiss its case against City of Stow as required by the court in the April 6, 2011 Status Conference Order. (ECF No. 28.) In any event, because Plaintiff cannot prevail on its claims against the City of Stow, the City of Stow's Motion for Ruling is granted and Plaintiff's claims are dismissed.

### IV. CONCLUSION

For the foregoing reasons, the court hereby grants Defendant City of Stow's Motion to Dismiss (ECF No. 3) and Motion for Ruling on Pending Motion to Dismiss (ECF No. 30). As the

court grants Defendant's Motion to Dismiss, Defendant's Motion for Summary Judgment (ECF No. 35) is denied as moot.

      IT IS SO ORDERED.

                              /s/ *SOLOMON OLIVER, JR.*
                              CHIEF JUDGE
                              UNITED STATES DISTRICT COURT

August 5, 2011