UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL V. SEDLAK, | ) | Case No.: 5:10 CV 500 |
| Plaintiff | ) ) | |
| v. | ) ) | JUDGE SOLOMON OLIVER, JR. |
| SYLVIA SEDLAK, *et al.*, | ) ) | |
| Defendants | ) | ORDER |

Plaintiff Daniel Sedlak ("Plaintiff" or "Mr. Sedlak") brings the instant action against Sylvia Sedlak ("Ms. Sedlak"), Deputy Sheriff Wes Dobbins ("Dobbins") (individually and in his official capacity), Sheriff Drew Alexander ("Alexander"), and Summit County. Currently pending before the court are Ms. Sedlak's Motion for Summary Judgment (ECF No. 29) and Defendants Dobbins, Alexander, and Summit County's Motion for Summary Judgment (ECF No. 36). For the reasons stated herein, the court grants the Motions.[1]

---

[1] When, as here, a district court had federal question jurisdiction on removal pursuant to 28 U.S.C. § 1331, it "may decline" to exercise supplemental jurisdiction over state law claims if it "dismisse[s] all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The inclusion of the word "may" indicates that the district court has discretion. *See Kuivila v. City of Conneaut*, 439 App'x 402, 404 (6th Cir. 2011) (citing *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635 (2009)). Here, after considering such factors as judicial economy, fairness to the parties, convenience, and comity, the court exercises its supplemental jurisdiction over the state claims. *See Gamel v. City of Cincinnati*, 625 F.3d 949, 951-52 (2010).

## I. BACKGROUND

### A. Factual Background

On February 20, 2009, Ms. Sedlak filed a written witness complaint against Plaintiff, her ex-husband, stating that he engaged in behavior that violated a protection order. (Am. Compl. ¶ 4, ECF No. 1-4). Specifically, Ms. Sedlak alleged that Plaintiff acted erratically due to a possible mental disorder and harassed her loved ones in order to gather information concerning her whereabouts. (*Id.*) Additionally, Ms. Sedlak stated that Plaintiff's alleged actions caused her to fear for her safety and the safety of her loved ones, including her granddaughter, roommate, and her roommate's children. (*Id.*) At the time of the written complaint, Plaintiff and Ms. Sedlak were married, but separated and engaged in divorce proceedings. (*Id.* at ¶¶ 1-2.) In the instant lawsuit, Plaintiff denies all allegations asserted by Ms. Sedlak in the written witness complaint. (*Id.* at ¶ 5.)

Ms. Sedlak completed her written witness complaint at the Summit County Sheriff's Department. (*Id.* at ¶ 3.) Deputy Dobbins, the officer on duty, took Ms. Sedlak's complaint and verified the existence of a valid protection order against Plaintiff. (Dobbins Aff. at ¶¶ 5-6, ECF No. 36-5.) Dobbins subsequently filed a criminal complaint against Plaintiff in Stow Municipal Court. (Am. Compl. ¶ 16, ECF No. 1-4.) Thereafter, a Deputy Clerk at the Stow Municipal Court issued an arrest warrant for Plaintiff, and he was later arrested by police officers who are not parties to the instant action. (*Id.* at ¶¶ 24, 34; Mr. Sedlak Dep. at 35-36, ECF No. 36-1.)

On February 23, 2009, Plaintiff was arraigned in the Stow Municipal Court for allegedly violating a protection order under Ohio R.C.§ 2919.27 and menacing by stalking under Ohio R.C. § 2903.211. (Am. Compl. ¶ 36, ECF No. 1-4.) The charges, however, were dismissed when Plaintiff agreed to sign a Recognizance Agreement in which he promised to have no contact with

Ms. Sedlak. (*Id*. at 38; ECF No. 36-4.) Irrespective of the reasons for dismissal of the charges against him, Mr. Sedlak proclaims that he was innocent at the time of arrest. (Am. Compl. ¶¶ 39-40, ECF No. 1-4.)

Approximately five months after the above criminal charges were dismissed, Plaintiff and Ms. Sedlak entered into an Agreed Judgment Entry of Divorce. (ECF No. 29-3.) The divorce entry incorporated, by reference, a separation agreement ("Separation Agreement") between Plaintiff and Ms. Sedlak, which provides:

> "each party hereto additionally, completely and forever releases the other party from any and all rights each has, or may have . . . [t]o rights, claims, demands, or causes of action that each may now have arising out of their marriage, or from any other act, agreement, or cause whatsoever occurring prior to the date of this Agreement."

(*Id*. at 6-7.)[2] Less than three months after the divorce entry, Plaintiff filed this action against Ms. Sedlak.

**B. Procedural Background**

On February 18, 2010, Plaintiff filed the instant action against Ms. Sedlak, Dobbins, Alexander, Summit County, the City of Stow, and John/Jane Doe 1-5 (as employees of the City of Stow), alleging various violations against each Defendant. The allegations against the City of Stow were dismissed by the court on August 5, 2011. (ECF No. 42). Plaintiff alleges the following causes of action against Ms. Sedlak: (1) abuse of process; and (2) intentional infliction of emotional distress. Plaintiff alleges the following causes of action against Defendants Dobbins, Alexander,

---

[2] The Separation Agreement also contains a provision entitled, ENTIRE AGREEMENT." (ECF No. 29-3.) Under this heading, the agreement provides that "[t]he parties have incorporated herein their entire understanding." (*Id*.)

- 3 -

and Summit County: (1) malicious prosecution; (2) false arrest and false imprisonment; (3) respondeat superior and negligent supervision; and (4) violation of 42 U.S.C. § 1983.

On May 20, 2011, Ms. Sedlak filed a Motion for Summary Judgment. (ECF No. 29-1). On July 5, 2011, Dobbins, Alexander, and Summit County followed suit, and filed their own Motion for Summary Judgment. (ECF No. 36).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides that:

> A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. . . .

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1).

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the

outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999). The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*.

If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show "more than a scintilla of evidence to overcome the summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Id*. Moreover, "the trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

### III. ANALYSIS

**A. Ms. Sedlak's Motion for Summary Judgment**

Ms. Sedlak asserts that she is entitled to summary judgment because of a general release in the Separation Agreement she entered into with Mr. Sedlak, which was executed five months after his causes of action allegedly accrued.  (Mot. at 1, ECF No. 29-1.)  Under Ohio law, a separation agreement incorporated into a divorce decree is a binding contract.  *See Johnson v. Johnson*, No. 2010-CA-2, 2011 WL 345671, at *7 (Ohio Ct. App. Feb. 4, 2011) (citations omitted);*Cefaratti v. Cefaratti*, No. 2004-L-091, 2005 WL 3528880, at *3, ¶ 22 (Ohio Ct. App. Dec. 23, 2005).  Because "a separation agreement is a contract, its interpretation is a matter of law."  *In re Cline*, No. 05-66866, 2008 WL 4224556, at *5 (Bkrtcy. N.D. Ohio Sept. 15, 2008) (citing *Forstner v. Forstner*, 588 N.E.2d 285, 288 (Ohio Ct. App. 1990)).

Generally, the intent of the parties governs the interpretation of a contract.  *See Ricupero v. Wuliger, Fadel, & Beyer*, No. 1:91-CV-0589, 1994 WL 483871 (N.D. Ohio Aug. 26, 1994).  Ohio courts presume that the intent of the parties resides in the language that they chose to use in the agreement.  *Shifrin v. Forest City Enters., Inc.*, 597 N.E.2d 499, 501 (Ohio 1992).  Unless the language of the contract is unclear or ambiguous, extrinsic evidence is inadmissible.  *Id*.

The language of the release is unambiguous.  It releases both parties from "any and all rights each has, or may have: [t]o rights, claims, demands, or *causes of action* that each may have arising out of their marriage, or from any other act, agreement, or cause whatsoever occurring prior to the date of this Agreement."  (Separation Agreement at 6-7, ECF No. 29-3.) (emphasis added).  The Separation Agreement clearly indicates that a cause of action arising out of any event prior to the execution of the agreement was meant to be waived.

Mr. Sedlak argues that it was not his understanding that a tort claim would be covered under the release in the Separation Agreement.  Specifically, he argues that, because the Separation

- 6 -

Agreement primarily consisted of matters related to their marriage, it was not meant to cover any possible tort claims. The court does not find this argument to be well-taken. In *Overberg v. Lusby*, 921 F.2d 90, 91 (6th Cir. 1990), the Sixth Circuit found this same argument to be unpersuasive. The *Overberg* court found that "the separation agreement that [the former spouses] executed was intended to tie up all loose ends and resolve all of the claims or disputes that might arise from the marriage relationship," which therefore barred the tort action. Here, the language is unambiguous, and Mr. Sedlak did not expressly reserve his right to bring a tort action. The alleged tortious actions of Ms. Sedlak occurred well before the execution of the Separation Agreement, and the divorce decree incorporating it. Both Mr. Sedlak and Ms. Sedlak were represented by, and consulted with, counsel during the finalization of the Separation Agreement. The Separation Agreement contains a merger clause stating that the parties understand the terms of the agreement and that the agreement contains the parties' entire understanding. Furthermore, "Ohio courts will not reform a contract in the case of unilateral mistake." *Riser Foods Co. v. Shoregate Properties, LLC*, No. 1:09-cv-489, 2011 WL 3921850, at *9 (N.D. Ohio Sept. 7, 2011); *see also Nicklin v. Henderson*, 352 F.3d 1077, 1081 (6th Cir. 2003) (holding that a unilateral mistake of fact is insufficient to reform a contract). After a thorough review of the Separation Agreement, the court finds that the intent of it was to bar all claims or disputes that occurred prior to the end of the marriage, which includes Mr. Sedlak's claims against Ms. Sedlak. Because Ms. Sedlak has demonstrated that no genuine dispute of material fact remains in regard to the claims against her, she is entitled to summary judgment.

**B. Dobbins, Alexander, and Summit County's Motion for Summary Judgment**

**1. Federal Law Claims Under 42 U.S.C. § 1983**

Plaintiff asserts that his constitutional rights have been violated by Defendants Dobbins, Alexander, and Summit County under 42 U.S.C. § 1983. Defendant Dobbins argues that he is entitled to qualified immunity on this claim. Defendants Alexander and Summit County argue that Plaintiff failed to state a claim under § 1983 and therefore, they are entitled to summary judgment.

### a. Qualified Immunity

Defendant Dobbins maintains that he is entitled to qualified immunity from Plaintiff's claims. Qualified immunity protects an official from liability if the official's conduct does not violate "clearly established" statutory or constitutional rights that a reasonable person would have known were in existence. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This does not mean that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Id*. (citing *Mitchell v. Forsyth*, 472 U.S. 511, 535 (1985)). Rather, it means that "in the light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640. *See e.g.*, *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986); *Mitchell*, 472 U.S. 528; *Davis v. Scherer*, 468 U.S.183 (1984).

Where qualified immunity is at issue, the plaintiff bears the ultimate burden of proof to show that the defendants are not entitled to qualified immunity. *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir.1991). A defendant bears the initial burden of putting forth facts that suggest that he was acting within the scope of his discretionary authority. *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992). If a defendant puts forth such facts, then "the burden shifts to the plaintiff to establish that the defendants' conduct violated a right so clearly established that any official in defendants' positions would have clearly understood that they were under an affirmative duty to refrain from such conduct." *Id*.

Previously in *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the Supreme Court articulated a mandatory two-step rule. The first step requires a showing that the defendant has violated a constitutional right. If such a showing is made, then one would proceed to determine whether the right was clearly established. The Supreme Court departed from this mandatory two-step test in *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009). While the test may still be appropriate in many cases, it is no longer mandatory. Thus, district and circuit court judges have the freedom to determine which prong of the immunity analysis to address first. *Id.* at 821. In the instant case, the court will apply the *Saucier* two-part test. *See also Waters v. City of Morristown, TN*, 242 F.3d 353, 360 (6th Cir. 2001) (A plaintiff must: (1) identify a violation of a constitutional right that was clearly established such that a reasonable officer would understand that what he is doing violates that right; and (2) show that the officers acted in an objectively unreasonable manner.).

Plaintiff asserts a claim against Dobbins in his individual capacity, under 42 U.S.C. § 1983, for seizure without probable cause in violation of his Fourth Amendment rights. Plaintiff argues that Dobbins applied for an arrest warrant that was unsupported by probable cause; thereby, violating Plaintiff's constitutional right to be free from arrest without probable cause. *See Baker v. McCollan*, 443 U.S. 137, 142-49 (1979). Probable cause means that the facts and circumstances within the officer's knowledge are sufficient to warrant a reasonably prudent person to believe, in the circumstances shown, an individual has committed or is about to commit the offense. *See Patrizi v. Huff*, 1:09-cv-2830, 2011 WL 4452402 (N.D. Ohio Sept. 26, 2011) (citing *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1010-11 (6th Cir. 1999)). Under this "flexible common-sense standard," *Texas v. Brown*, 460 U.S. 730, 742 (1983), the establishment of probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983); *see also United States v. Miller*, 314 F.3d 265, 268

(6th Cir. 2002) (interpreting *Gates* and the totality of the circumstances test to require the court to "make a practical, common sense decision . . . given all the circumstances . . ., including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information"). Mere speculation that a crime occurred is insufficient to establish probable cause. *See McCurdy v. Montgomery County, Ohio*, 240 F.3d 512, 519 (6th Cir. 2001). Once probable cause exists, however, "an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Carrasquillo v. City of Cleveland*, No. 1:10-cv-00219, 2011 WL 3841995 (N.D. Ohio Aug. 30, 2011) (quoting *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999)).

In applying the probable cause standard, the court finds that Dobbins did not violate a clearly established constitutional right of Plaintiff or that he acted in an objectively unreasonable manner. Dobbins' actions were reasonable in view of all the circumstances. First, Ms. Sedlak made in an in-person written complaint that could have, if Ms. Sedlak was found to have provided false information, resulted in a criminal penalty. Second, Dobbins observed, as indicated in his deposition testimony, that Ms. Sedlak clearly feared for her safety. *See* (Dobbins Dep. at 11, 50.); *see also Mayo v. Macomb County*, 183 F.3d 554, 557 (6th Cir. 1999) (holding that an officer acted reasonably, and, therefore, was entitled to qualified immunity, when he relied upon the fear displayed by a victim alleging that her husband violated a personal protection order). Third, Dobbins checked to make sure that a valid protection order against Plaintiff existed at the time of her written complaint. Fourth, a neutral and detached magistrate reviewed the warrant application and issued the warrant. *See United States v. United States District Court, Eastern Dist. of Michigan*, 407 U.S. 297, 318 (1972) ("Prior review by a neutral and detached magistrate is the time-tested means of effectuating Fourth Amendment rights."). Finally, under Ohio law, when reasonable grounds exist to believe that a person has violated a protection order, the preferred course of action

is to make an arrest. *See* Ohio R.C. § 2935.03(B)(3)(b). Under R.C. 2935.03(B)(3)(a)(i), reasonable cause to believe a person has violated a protection order exists when a person executes a written statement alleging that the person in question violated the order.

Plaintiff does not provide any evidence that the probable cause determination bore any indicia of unreliability. Plaintiff argues that probable cause did not exist because Dobbins conducted an incomplete and poor investigation, as reflected by the fact that he did not rely on "eyewitness" or first-hand testimony. However, Plaintiff is incorrect. Under the Fourth Amendment, a warrant must only be based on reliable information, taking into account all the circumstances. Thus, the fact that Plaintiff's alleged harassing behavior was reported to Ms. Sedlak *via* third parties does not automatically negate a finding of probable cause. Furthermore, Plaintiff fails to provide any support for his assertion that first-hand testimony is required or that independent investigation of Ms. Sedlak's claims was required to establish probable cause. The court finds that there was no Fourth Amendment violation and that Defendant Dobbins is entitled to summary judgment in his favor on the basis of qualified immunity.

### b. Municipal Liability

Defendants Alexander, Sheriff of Summit County, and Summit County, argue that they are entitled to summary judgment on Plaintiff's § 1983 claim because Plaintiff has failed to set forth any allegations that a policy, custom, or practice resulted in a violation of his rights, as required by the Supreme Court. Plaintiff merely asserts in a general manner that, under 42 U.S.C. § 1983, Defendants Alexander and Summit County had a policy or custom that deprived him of his constitutional rights. Further, in the same generalized manner, Plaintiff contends that Defendants Alexander and Summit County created a policy and/or custom which operated to deprive him of his rights.

Plaintiff's claim against Defendant Alexander is really a claim against the municipality itself. The Sixth Circuit has explained that "[s]uing a municipal officer in his official capacity for a constitutional violation pursuant to 42 U.S.C. § 1983 is the same as suing the municipality itself, and thus a successful suit against a municipal officer in his official capacity must meet the requirements for municipality stated in *Monell*." *Kramer v. Luttrell*, 189 F. App'x 361, 366 (6th Cir. 2006). Therefore, the claim against Defendant Alexander is essentially another way to assert a claim against Summit County. Consequently, the claims must be analyzed together.

To prevail on a claim against a municipality, such as a county, under § 1983, a plaintiff must establish both: (1) the deprivation of a constitutional right; and (2) the city's responsibility for that violation. *See Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2010) (citing *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006)). However, a municipality cannot be held liable under the theory of *respondeat superior*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a plaintiff suing a municipality must identify an unconstitutional policy or custom in order to prevail on a § 1983 claim. *See id*. at 694. A policy that fails to adequately train an employee, such as a police officer, may "serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). To establish liability under *City of Canton*, "the plaintiff must prove . . . that the training program at issue is inadequate to the tasks that officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." *Russo v. City of Cincinnati*, 953 F.3d 1036, 1046 (6th Cir. 1992) (citing *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989)).

Officers at the Summit County Sheriff's Department complete 40 hours of training annually. (Dobbins Dep. at 54.) The training includes instruction on the handling of protection order violations. (*Id*. at 54-55.) Plaintiff fails to allege that this practice or any other policy or custom violated his constitutional rights. Therefore, he is unable to establish a § 1983 claim because he has neither demonstrated that there was a deprivation of a constitutional right nor that Summit County is responsible for any violation of a constitutional right. Because Defendants Alexander and Summit County have demonstrated that no genuine dispute of material fact remains in regard to Plaintiff's § 1983 claim, they are entitled to summary judgment.

Plaintiff also brings a *respondeat superior* and negligent supervision claim under § 1983 against Defendants Summit County and Alexander for the actions of Dobbins.[3] However, a municipality cannot be held liable under the theory of *respondeat superior*. *See Monell*, 436 U.S. at 691. In addition, Supreme Court precedents have established that "[g]overnment officials may not be held liable for unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009). Further, the Sixth Circuit has stated that "the case law has limited s 1983 so as not to reach isolated instances where a negligent failure to adequately supervise, train, or control was involved." *Hays v. Jefferson County, Ky*, 668 F.2d 869, 873 (6th Cir. 1982). A plaintiff must allege more than negligent failure to supervise an employee in order for a supervisor to be liable for that employee's conduct. The *Hays* court stated that "[a]t a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers" in order to establish supervisory liability under § 1983. Plaintiff has made no such showing. He asserts that "Defendant

---

[3] As it is unclear in the Complaint whether Plaintiff brings his *respondeat superior* and negligent supervision claim under § 1983 or as a state law claim, the court will analyze the claim under both.

Alexander was responsible for overseeing, training, and supervising Defendant Dobbins" and that he "had a duty to use ordinary and reasonable care in overseeing, training, and supervising Defendant Dobbins." (Am. Compl. ¶¶ 69, 71, ECF No. 1-4.) Plaintiff alleges that Defendant Alexander "failed to exercise ordinary and reasonable care in the overseeing, training, and supervision of Defendant Dobbins." (*Id*. at ¶ 73.) However, Plaintiff has not provided evidence of a failure to train that resulted in a violation of a constitutional right or that Alexander approved an unconstitutional act. Therefore, Plaintiff is unable to establish a negligent supervision claim against Alexander.

Similarly, Plaintiff is unable to establish a negligent supervision claim against Summit County. The Supreme Court has stated that "showing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability." *Connick v. Thompson*, 131 S.Ct 1350, 1363 (2011). The *Connick* court stated that

> [p]olicymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action–the deliberate indifference-necessary to trigger municipal liability. Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

*Id*. at 1360. (internal citation and quotation marks omitted.) Plaintiff has failed to show any constitutional violation occurred or that Summit County failed to adequately train their officers, which caused a violation of Plaintiff's constitutional rights. Moreover, Plaintiff's Opposition fails to identify any policy, custom, or practice which resulted in a violation of his rights, or any lack of training that resulted in constitutional law rights. Because Defendants Summit County and Alexander have demonstrated that no genuine dispute of material fact remains in regard to

Plaintiff's *respondeat superior* and negligent supervision claim, they are entitled to summary judgment on this claim.

### 2. State Law Claims

While Defendants Dobbins, Alexander, and Summit County argue that they should all be granted statutory immunity on Plaintiff's state law claims, and Plaintiff opposes this assertion, both parties did a poor job of briefing the issues. Nevertheless, based on the facts presented, the outcome is clear that the Defendants are entitled to statutory immunity.

#### a. Dobbins

Plaintiff asserts three state law claims against Dobbins: malicious prosecution, false arrest, and false imprisonment. Defendant Dobbins argues he is entitled to statutory immunity from the state law claims against him. Ohio provides immunity from suit to state employees of political subdivisions when those employees' activities are connected to governmental or proprietary functions, unless (1) the employee's acts were outside the scope of employment or official responsibilities; (2) the employee acted with a malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) another section of the Ohio Revised Code expressly imposes liability. Ohio Rev. Code § 2744.03(A)(6). Ohio courts apply a presumption of immunity. *See Sabo v. City of Mentor*, 657 F.3d 332, 337 (6th Cir. 2011) (citing *Cook v. City of Cincinnati*, 658 N.E.2d 814, 821 (Ohio Ct.App. 1995)).

Plaintiff alleges that Dobbins acted with malice or reckless disregard for the truth when he applied for an arrest warrant. Under Ohio law, "'malice' refers to the willful and intentional design to do injury." *Shalkhauser v. City of Medina*, 772 N.E.2d 129, 136 (Ohio Ct. App. 2002). The Sixth Circuit has stated that "'[r]eckless' conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk

of physical harm and that this risk is greater than that necessary to make the conduct negligent." *Sabo*, 657 F.3d at 337 (quoting *Shalkhauser*, 772 N.E.2d at136).

Although recklessness determinations generally go to a jury, upon review of the record, the court finds that Dobbins is entitled to summary judgment on the basis of statutory immunity on Plaintiff's state law claims against him. Plaintiff only produces bald conclusory statements that Dobbins either acted with malice or with recklessness, but provides no support for this claim. Such statements, alone, cannot defeat a motion for summary judgment when Ohio courts apply a presumption of immunity. Even viewing the facts in a light most favorable to Plaintiff, without such a presumption, it cannot be said that the actions allegedly committed by Dobbins were outside the scope of his employment or official responsibilities, or that he acted with a malicious purpose, in bad faith, or in a wanton or reckless manner. Ohio Rev. Code § 2744.03(A)(6). Therefore, the court finds that Defendant Dobbins is entitled to summary judgment in his favor on the basis of statutory immunity on the state law claims against him.

### b. Alexander and Summit County

Plaintiff asserts four state law claims against Alexander and Summit County: malicious prosecution, false arrest, false imprisonment, and respondeat superior and negligent supervision. Defendants argue that no genuine dispute of material fact exists on these claims and therefore they are entitled to summary judgment.

As indicated by Plaintiff's Complaint, the respondeat superior and negligent supervision claim hinges upon Dobbins' liability. Under Ohio law, "if an employee has no liability, the employer cannot be held liable under the theory of respondeat superior because any liability of the employer is derivative of an employee's liability." *Walk v. Ohio Supreme Court*, No. 03AP-205, 2003 WL 22290209, at ¶6 (Ohio Ct. App. Oct. 7, 2003). As stated above, probable cause existed

- 16 -

and thus, there was no violation of Plaintiff's Fourth Amendment rights. Because the Ohio Supreme Court applies the same totality-of-the-circumstances standard used to interpret the Fourth Amendment in Section 14, Article I of the Ohio Constitution, the court finds that Dobbins's actions also did not violate the probable cause requirement of the Ohio Constitution. *See State v. Wildman,* 923 N.E.2d 1240, 1243-44 (Ohio Ct. App. 2009) (citing *State v. George*, 544 N.E.2d 640, ¶ 1 (1989)). Thus, Alexander and Summit County cannot be held liable under a theory of respondeat superior and negligent supervision.

As to the other state claims for malicious prosecution, false arrest, and false imprisonment, Alexander and Summit County are entitled to statutory immunity. Ohio provides immunity from suit "to a political subdivision . . . if the conduct of the employee involved, other than negligent conduct, that gave rise to the claim of liability was required by law or authorized by law . . . ." Ohio Rev. Code § 2744.03(A)(2). Dobbins's actions that gave rise to the claim were authorized by Ohio statute. *See* Ohio R.C. § 2935.03(B)(3)(b). The statute provides that when reasonable grounds exist to believe that a person has violated a protection order, the preferred course of action is to make an arrest. *See id*. Under Ohio R.C. 2935.03(B)(3)(a)(i), reasonable cause to believe a person has violated a protection order exists when a person executes a written statement alleging that the person in question violated the order. Thus, Dobbins properly arrested Plaintiff. Accordingly, Summit County is statutorily immune from Plaintiff's state law claims against it.

While Alexander is not shielded from liability under the same provision as Summit County, he has protection from suit under the same statute. *See* Ohio Rev. Code § 2744.03(A)(6). Alexander is entitled to statutory immunity as a state employee performing activities connected to governmental or proprietary functions who did not act with malice or reckless behavior. *See id*. No evidence has been presented that would suggest otherwise. Therefore, Alexander is also

statutorily immune from Plaintiff's state law claims against him. Consequently, Alexander and Summit County are entitled to summary judgment on the state law claims against them.

### IV. CONCLUSION

For the foregoing reasons, the court grants Defendant Sedlak's Motion for Summary Judgment (ECF No. 29) and Defendants Dobbins, Alexander, and Summit County's Motion for Summary Judgment (ECF No. 36).

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

January 12, 2012